Lipov v. Flagship Healthcare Props., LLC, 2021 NCBC 60.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

JANET P. LIPOV, individually and as trustee of the Larry A. Lipov 2012 GST Trust; LARRY A. LIPOV, individually and as trustee of the Janet P. Lipov 2012 GST Trust; and EDWIN PEARLSTINE,

Plaintiffs,

v.

FLAGSHIP HEALTHCARE PROPERTIES, LLC; FLAGSHIP CAPITAL PARTNERS, LLC; and R. MICHAEL ALLEN, as Administrator CTA of the Estate of William Charles Campbell,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 6689

**ORDER AND OPINION
ON MOTION TO DISMISS**

*Nelson, Mullins, Riley & Scarborough LLP, by David N. Allen, Thomas G. Hooper, and Anna Majestro, for Plaintiffs Janet Lipov, Larry Lipov, and Edwin Pearlstine.*

*Moore & Van Allen PLLC, by Scott M. Tyler, Joshua D. Lanning, and Raquel Macgregor Pearkes, for Defendant Flagship Healthcare Properties, LLC.*

Conrad, Judge.

1. In this action, Janet Lipov, Larry Lipov, and Edwin Pearlstine allege that they were defrauded by the late William Charles Campbell. The Lipovs and Pearlstine have sued Campbell's estate and two companies that Campbell managed, Flagship Healthcare Properties, LLC and Flagship Capital Partners, LLC. Pending is a partial motion to dismiss filed by Flagship Healthcare Properties. (*See* ECF No. 9.)

2. The facts alleged in the complaint, which must be taken as true, tell a sad story. For more than a decade before his death, Campbell was CEO and managing partner of Flagship Healthcare Properties. His duties included soliciting investors for the company's real-estate and development projects. In 2018, he was introduced to the Lipovs and Pearlstine and, on several occasions, invited them to invest, promising that their money would go toward the development of doctors' offices and other sensible real-estate projects pursued by Flagship Healthcare Properties. Persuaded by the pitch, the Lipovs and Pearlstine gave Campbell several million dollars to invest over the next two years, all documented in eight promissory notes. (*See, e.g.*, Compl. ¶¶ 11, 13, 19, 21, 25, 34, 35, 45, 57, Exs. 1–8, ECF No. 3.)

3. None of that money went to Flagship Healthcare Properties or its real-estate and development projects. Instead, Campbell routed each investment through Flagship Capital Partners—a company that he wholly owned and that, despite the shared moniker, had no relationship with Flagship Healthcare Properties. Campbell signed all eight promissory notes on behalf of Flagship Capital Partners, not Flagship Healthcare Properties. He also put the investment funds in a bank account in the name of Flagship Capital Partners, which served as his personal "slush fund." (Compl. ¶¶ 14, 22, 38, 42.)

4. In late 2020, Campbell took his own life. (*See* Compl. ¶ 71.) Afterward, the Lipovs and Pearlstine stopped receiving payments under the promissory notes. (*See* Compl. ¶ 75.) When they asked Flagship Healthcare Properties about the delinquent payments, the company reported that it had no access to the accounts of Flagship

Capital Partners. (*See* Compl. ¶¶ 78, 82.) Further investigation revealed that Campbell had used the investment funds for personal purposes. (*See* Compl. ¶ 83.)

5. This action followed. The Lipovs and Pearlstine have asserted several claims against Campbell's estate and Flagship Capital Partners for fraud, negligent misrepresentation, and breach of contract. They have also asserted the claims for fraud and negligent misrepresentation against Flagship Healthcare Properties on an agency theory.

6. In response, Flagship Healthcare Properties filed its partial motion to dismiss. *See* N.C. R. Civ. P. 12(b)(6). The motion is now fully briefed. Although the Court had scheduled a hearing, circumstances related to the COVID-19 pandemic necessitated its cancellation. Because further delay would not serve the interests of the case, the Court elects to decide the motion without a hearing. *See* Business Court Rule 7.4.

7. Only the claim for negligent misrepresentation is at issue. This tort "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988). In deciding whether the complaint adequately states a claim for relief, the Court views the facts and permissible inferences "in the light most favorable to" the Lipovs and Pearlstine as the nonmoving parties. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted).

8.     Flagship Healthcare Properties presses two discrete grounds for dismissal: first, that the claim is barred by the economic loss rule and, second, that there are no allegations that it owed the Lipovs and Pearlstine a duty of care.  Neither is persuasive.

9.     The economic loss rule "generally bars recovery in tort for damages arising out of a breach of contract." *Rountree v. Chowan County*, 252 N.C. App. 155, 159 (2017); *see also Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 58 (2020).  "To state a viable claim in tort for conduct that is also alleged to be a breach of contract, a plaintiff must allege a duty owed to him by the defendant separate and distinct from any duty owed under a contract." *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at \*48 (N.C. Super. Ct. Nov. 3, 2011) (citation and quotation marks omitted).

10.     Here, the complaint does not aim to conjure a tort out of the alleged breaches of the promissory notes.  Rather, the claim is based on precontractual conduct—allegations that Campbell induced the Lipovs and Pearlstine to sign the notes based on false information and false promises about how their money would be invested.  Our appellate courts have held that a party has a duty not to give false information for the purpose of inducing another to execute a contract.  *See Kindred of N.C., Inc. v. Bond*, 160 N.C. App. 90, 101 (2003).  This duty is one imposed by law and is separate and distinct from any duty imposed by the contract itself.  Thus, the economic loss rule does not bar the claim.  *See, e.g., City of High Point v. Suez Treatment Sols. Inc.,* 2020 U.S. Dist. LEXIS 47641, at \*26–30 (M.D.N.C. Mar. 19,

2020) (denying motion to dismiss claim based on precontractual misrepresentations); *Schumacher Immobilien und Beteiligungs AG v. Prova, Inc.*, 2010 U.S. Dist. LEXIS 107526, at *5–6 (M.D.N.C. Oct. 7, 2010) (denying motion for summary judgment on similar grounds); *see also Kapur v. IMW EMR, LLC*, 2020 NCBC LEXIS 148, at *23–24 (N.C. Super. Ct. Dec. 18, 2020) (contrasting claims based on precontractual and postcontractual misrepresentations).

11.   It follows that the complaint adequately alleges a duty of care. Flagship Healthcare Properties observes that the word "duty" is missing from the complaint. But magic words aren't required. The test is simply whether the allegations, liberally construed, show that Campbell owed a duty of care. They do. And for purposes of this motion, Flagship Healthcare Properties does not dispute that it is vicariously liable for Campbell's wrongdoing. Accordingly, the complaint sufficiently alleges the elements of the claim. *See Hunter v. Guardian Life Ins. Co. of Am.,* 162 N.C. App. 477, 484 (2004) (reversing granting of motion to dismiss); *Kindred of N.C.*, 160 N.C. App. at 101 (affirming denial of motion for directed verdict); *see also Ada Liss Grp. v. Sara Lee Corp.*, 2010 U.S. Dist. LEXIS 59691, at *35 (M.D.N.C. Apr. 27, 2010) (denying motion to dismiss).

12.   For all these reasons, the Court **DENIES** the motion to dismiss.

**SO ORDERED**, this the 20th day of September 2021.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases